IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DANA BOWMAN, § § Plaintiff, § § VS. § § KCAP RE FUND II, LLC, et al., § § Defendants, § and § § SILVER LEAF BTR, LLC a/k/a § SILVER LEAF JOSHUA LLC, and § SILVER LEAF COMMUNITIES, LLC, § § Defendants-Third-Party Plaintiffs, § § VS. § § TRIUNE ARCHITECTURE PLLC, § and WESLEY W. GUSTIN, § § Third-Party Defendants. § | Civil Action No. 3:24-CV-2472-D |

MEMORANDUM OPINION
AND ORDER

In this action alleging violations of the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3601-3619, defendants-third-party plaintiffs Silver Leaf BTR, LLC, a/k/a Silver Leaf Joshua LLC ("Silver Leaf Joshua") and Silver Leaf Communities, LLC ("Silver Leaf Communities") move for partial summary judgment against third-party defendants Triune Architecture PLLC ("Triune") and Wesley W. Gustin ("Gustin"). For the reasons that follow, the court grants the motion.

I

The Residence at Joshua Landing Apartments (the "Property") is a two-story apartment complex that contains approximately 100 units spread over 25 structures with approximately 50 covered ground floor units.[1]  Each of the 25 structures contains four apartment units (two upstairs and two downstairs) that share a common roof.  The structures sit on two separately platted pieces of property and are divided in half by a firewall.

Plaintiff Dana Bowman ("Bowman"), a handicapped veteran, filed the instant lawsuit against Silver Leaf Communities and Silver Leaf Joshua[2] (collectively, "Silver Leaf," unless the context indicates otherwise), among others,[3] alleging that the Property violates the accessibility requirements for multi-family dwellings described in 42 U.S.C. § 3604(f)(3)(C). Silver Leaf, in turn, filed a third-party complaint against Triune and Gustin (collectively, "Triune," unless the context indicates otherwise), asserting claims for fraud, breach of

---

[1] In recounting the factual background, the court summarizes the evidence in the light most favorable to Triune and Gustin as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.).

[2] Silver Leaf Communities is a construction company that participated in construction of the Property, and Silver Leaf Joshua was the contractor of record for the Property.

[3] Plaintiff also sues KCAP RE Fund II, LLC (the former owner of the Property); KCAP RE Fund II Joshua, LLC, Abdeen Joshua Holdings, LLC, Alemer Joshua Holdings, LLC, Hatcher Joshua Holdings, LLC, Horany Joshua Holdings, LLC, Jensen Joshua Holdings, LLC, Lingampalli Joshua Holdings, LLC, Nobles Joshua Holdings, LLC, Schroeder Joshua Holdings, LLC, Skaugstad Joshua Holdings, LLC, and Vista Grande Dairy Joshua Holdings, LLC (the current co-owners of the Property); KeyCity Capital, LLC (the developer of the Property); and KeyCity Fund Management, LLC (the manager for the current co-owners of the Property).

contract, and contribution, and alleging, *inter alia*, that Triune was responsible for the design of the Property and that its design was defective because the Property, as designed, does not meet the requirements of § 3604(f)(3)(C).

Silver Leaf now moves for partial summary judgment, requesting that the court conclude, as a matter of law, "that each of the twenty-five structures is one building and thus each ground floor apartment unit is a 'covered multifamily dwelling' as that term is used in 42 U.S.C. § 3604(f)(7)." Silver Leaf Br. (ECF No. 37) at 3. Bowman joins the motion, and Triune opposes the motion, which the court is deciding on the briefs, without oral argument.

II

When, as here, the summary judgment movant will have the burden of proof on a claim, the movant "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

A

The FHA prohibits discrimination in housing "because of a handicap." 42 U.S.C. § 3604(f)(1), (2).  Under § 3604(f)(3)(C), discrimination includes, "in connection with the design and construction of covered multifamily dwellings . . . a failure to design and construct those dwellings" in the manner specified in the statute.[4]  "Covered multifamily dwellings" are defined as follows:

> [a]s used in this subsection, the term "covered multifamily dwellings" means—
> (A) buildings consisting of 4 or more units if such buildings have one or more elevators; and
> (B) ground floor units in other buildings consisting of 4 or more units.

*Id.* § 3604(f)(7).

---

[4]Under § 3604(f)(3)(C), covered multifamily dwellings must be designed and constructed in such a manner that:

> (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
> (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
> (iii) all premises within such dwellings contain the following features of adaptive design:
> > (I) an accessible route into and through the dwelling;
> > (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
> > (III) reinforcements in bathroom walls to allow later installation of grab bars; and
> > (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

B

Silver Leaf contends that, although each structure on the Property is divided in half by a firewall and sits on two separately platted pieces of property, the ground floor units constitute "covered multifamily dwellings," as that term is used in § 3604(f)(7), because each structure is a single "building" consisting of four units. In support, Silver Leaf maintains that, at the time § 3604(f) was enacted, the Uniform Building Code defined "building" to include "[a]ny structure used or intended for supporting or sheltering any use or occupancy," Silver Leaf Br. (ECF No. 37) at 4; that the term "building" is therefore synonymous with the term "structure," and "refers to everything under one roof," *id.*; that the Fair Housing Accessibility Guidelines ("Guidelines")[5] state that "[d]welling units within a single structure separated by firewalls do not constitute separate buildings," *id.* at 5 (emphasis omitted) (quoting Final Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9500 (Mar. 6, 1991)), and confirm that a "building" is a "single structure covered by one roof without regard to internal divisions," *id.*; and that the platting of the property can have no relevance to whether a building is a "covered multifamily dwelling" because neither the FHA nor the regulations refer to plats, surveys, or the location of property lines.

---

[5]The Guidelines were promulgated by the U.S. Department of Housing and Urban Development, which is the federal agency primarily charged with administering the FHA. *See* 42 U.S.C. § 3608(a).

Triune responds that the plat and civil drawings treat the Property as a collection of duplexes and that

> Silver Leaf's plat of the property and the civil drawings it provided, along with its plan to develop the project as duplexes, suggests that Silver Leaf intended the plat to have significance in the development of the property. The Court should deny [Silver Leaf]'s Motion for Partial Summary Judgment to give effect to Silver Leaf's intent to develop the project as duplexes.

Triune Br. (ECF No. 40) at 2.

In his combined joinder and reply, Bowman responds *inter alia* that there is no authority for Silver Leaf's assertion that, because the units are built on separate lots, they need not comply with the FHA; that separating the building by firewalls and lot lines does not make the two bottom story units part of "duplexes" that are not covered dwelling units; and that

> [f]or Fair Housing purposes, if these were to be duplexes and non-covered, then the units would need to have internal staircases combining the two stacked units. This design would have resulted in a single 2-story unit on the left side and a single 2-story unit on the right side of the building. This would truly be a "duplex" under Fair Housing and dictionary definitions and not considered a covered multifamily dwelling under the FHA definition. The designed and constructed buildings have 4 units per building and the bottom 2 units are covered Fair Housing units.

P. Br. (ECF No. 41) at 6-7 (footnotes omitted).

C

For largely the reasons explained in Silverleaf's motion and in Bowman's joinder and reply, the court holds that Silver Leaf has established beyond peradventure that the ground

floor units on the Property are "covered multifamily dwellings" that are subject to the accessibility requirements of § 3604(f)(3)(C). As stated above, a "covered multifamily dwelling" includes "ground floor units in other buildings consisting of 4 or more units." 42 U.S.C. § 3604(f)(7). Although Triune cites evidence that it entered into a contract with Silver Leaf to design 25 "2x Duplex Flats," Triune Br. (ECF No. 40) at 2, it does not dispute that the Property was designed and built as multifamily apartments with four separate units per building. Nor has it provided any authority in support of its position that a single structure built on two separately platted pieces of property constitutes two "buildings," for purposes of the FHA.[6]

Courts have uniformly held that all ground floor units in buildings with four or more units are subject to the FHA's accessibility requirements. *See, e.g.*, *United States v. Shanrie Co.*, 669 F.Supp.2d 932, 937 (S.D. Ill. 2009) ("It is undisputed that Rockwood consists of covered multifamily dwellings as defined by the statute at both the Hartman Lane apartments and Rockwood Court apartments. Rockwood does not contain any buildings with elevators, but the buildings do consist of 4 or more units. Therefore, only the ground floor units are subject to the accessibility requirements contained in the FHA."); *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 250 F.Supp.2d 706, 718 (W.D. Ky. 2003) ("Defendants' units are structurally connected by a single roof. While the dwellings may be separated by a firewall, this fact does [not] prevent them for being considered as a single building. Each

---

[6]Triune appears to have abandoned its argument that each structure consists of two "buildings" due to the presence of a firewall separating the two sides.

cluster of 4 units must . . . be considered a single building for purposes of the design and construction requirements of [the FHA]. Accordingly, all Defendants' units are covered by the Act with the exception of the multi-story units." (citations omitted)).

Accordingly, the court grants Silver Leaf's motion and holds, as a matter of law, that each of the ground floor units in the 25 structures on the Property is a "covered multifamily dwelling" subject to the accessibility requirements prescribed in § 3604(f)(3)(C).

* * *

For the reasons explained, the court grants Silver Leaf's motion for partial summary judgment.

**SO ORDERED**.

December 30, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE